Mr. Michael J. Wasserman Arkansas Resorts Hotels, Inc. 391 CR 214 Gainesville, TX 76240
Dear Mr. Wasserman:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. I am issuing this opinion solely to consider certifying a ballot title and popular name for the text of your measure. Given that this office has no authority to consider the merits of any measure, neither certification nor rejection of your proposed popular name and ballot title reflects my view regarding the substance of your proposal.
Your proposed popular name and ballot title are as follows:
 Popular Name AN AMENDMENT TO LEGALIZE THE GAMES OF CHARITABLE BINGO AND RAFFLES AND TO CREATE THE ARKANSAS BINGO COMMISSION Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO:
 1) AUTHORIZE THE GAMES OF CHARITABLE BINGO AND RAFFLES IN ARKANSAS AS REGULATED BY THE ARKANSAS BINGO COMMISSION;
 2) CREATING THE ARKANSAS BINGO COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES; PROVIDING THAT THE GENERAL ASSEMBLY SHALL APPROPRIATE SUCH FUNDS AS ARE NECESSARY FOR ITS OPERATIONS, THAT IT SHALL BE AUDITED BY THE STATE AUDITOR AT LEAST ONCE A YEAR AND PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS;
 3) PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PARTICIPATING IN BINGO OR RAFFLES
 4) PROVIDING THAT THE GENERAL ASSEMBLY SHALL ENACT LEGISLATION SO THAT THE GAMES MAY BEGIN AT THE EARLIEST POSSIBLE TIME AND PROVIDING THAT THE GENERAL ASSEMBLY SHALL NOT ENACT OR LEVY ANY TAX AGAINST CHARITABLE BINGO OR RAFFLES.
 5) PROVIDING THAT THE BINGO COMMISSION SHALL NOT CHARGE A FEE IN EXCESS OF $50.00 PER ANNUM TO ANY ORGANIZATION FOR A LICENSE TO OPERATE BOTH CHARITABLE BINGO AND RAFFLES;
 6) RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; and
 7) DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT[.]
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly and fairly set forth the purpose of the proposed amendment or act.See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463,466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
Among these ambiguities are the following:
1. Section 1 of your proposed amendment provides:
 The games of charitable bingo and raffles are hereby authorized to be played within the State of Arkansas and shall be regulated by the Arkansas Bingo Commission.
 Section 2(1) of your proposed amendment elaborates on this authorization as follows:
 A commission to be known as the Arkansas Bingo Commission to consist of three (3) Commissioners is hereby created. The Arkansas Bingo Commission shall regulate charitable bingo and raffles to be conducted by charitable organizations with the State of Arkansas.
 Your measure is unclear in that it fails to define precisely what you mean by the terms "bingo" and "raffles." Accordingly, I am unable to summarize your measure in a ballot title. You further fail to specify either what you mean by the term "charitable" or what you mean by the phrase "bingos and raffles to be conducted by charitable organizations within the State of Arkansas." Are you proposing to allow any charitable organization to conduct bingo and raffles within the state or only charitable organizations incorporated in the state? I cannot accurately summarize your proposal until this ambiguity is resolved.
 2. You further fail to specify anywhere in your proposed measure precisely what sort of "regulation" the Arkansas Bingo Commission would be charged with undertaking. Beyond the two references to "regulation" referenced above, your measure at no point addresses what the duties of the Commission would be. It is further unclear what authority, if any, the General Assembly might have in defining the scope of the Commission's regulatory authority. I note that section 4 of your proposed amendment provides that "[t]he General Assembly shall enact legislation so that charitable bingo and raffles may begin at the earliest possible time." It is unclear what authority, if any, this directive invests in the legislature to define the scope of the Commission's duties. The only other references to legislative action are set forth in section 2(2) of your proposed measure, which charges the legislature with setting the terms and qualifications of commissioners and concurring in the governor's possible removal of a commissioner for cause, and in section 2(3), which directs the General Assembly to "appropriate such funds as are necessary for the operation of the Arkansas Bingo Commission." It is unclear whether by negative inference these provisions would preclude the legislature from defining the Commission's duties.
 In this regard, I will note that the General Assembly does not need any conferral of power in order to retain its law-making power over the subject matter. See Ark. Ops. Att'y. Gen. Nos. 2006-037, at 8-9 and 2005-089, at 6 (quoting precedent to the effect that: "It is generally held . . . as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100
(1979); Jones v. Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279 (1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution. Id.)" If it is your intention by constitutional amendment to deny the General Assembly power to regulate the Commission except with respect to the matters discussed in the previous paragraph, this fact must be expressly stated or necessarily implied or the General Assembly will retain that power. I cannot determine from your current language whether a "necessary implication" exists. The confusion regarding what entity will have power to set policy regarding the conduct of charitable bingo and raffles, such as determining precisely what entities may conduct such activities and under what conditions, may give the voters serious ground for reflection. These points must be clear in your measure and in a ballot title summarizing it.
 3. Section 2(2) of your proposed amendment is further unclear in providing that "no person having any interest in pari-mutual [sic: `pari-mutuel'] operations or any other gaming interest" will be eligible to serve on the Commission. The term" gaming interest" is unclear, and, as a consequence, I cannot adequately summarize this condition for the voters.
4. Section 2(5) of your proposed amendment provides:
 Any person aggrieved by a final decision, order, or the failure or refusal of the Arkansas Bingo Commission to act, may obtain a judicial review in the Circuit Court of Pulaski County or in the county where the aggrieved party is located.
 It is unclear in your proposed amendment precisely what sorts of "final decisions" or "orders" the Commission will be authorized to make or what sort of "action" the Commission might be obligated to undertake. Beyond an oblique reference to the Commission's licensing authority (section 4 prohibits the Commission from charging more than $50 per year for a license), your proposed measure does not clearly state what regulatory authority the Commission would possess and what controls the General Assembly might exercise over that regulatory authority. Without clarification of these questions, I cannot accurately summarize your measure in a ballot title.
 5. Section 4 of your proposed measure further provides that "[t]he General Assembly shall not enact or levy any tax against charitable bingo or raffles." It is unclear in your submission precisely what you intend the scope of this proscription to be. Does it extend to sales tax on supplies used in the operations or to income tax on winnings? Without clarifying your intention in including this provision, I cannot accurately summarize its significance for the voters.
 6. Finally, I feel obliged to advise you that the voters at the next election will be considering Referred Amendment # 1, which calls for the legalization of bingo and raffles conducted by various nonprofit organizations. The popular name of this measure reads as follows:
 A CONSTITUTIONAL AMENDMENT PROVIDING THAT BINGO AND RAFFLES, IF CONDUCTED BY AUTHORIZED ORGANIZATIONS (DEFINED AS NONPROFIT RELIGIOUS, EDUCATIONAL, VETERANS, FRATERNAL, SERVICE, CIVIC, MEDICAL, VOLUNTEER RESCUE, VOLUNTEER FIRE, AND VOLUNTEER POLICE ORGANIZATIONS), SHALL NOT BE CONSTITUTIONALLY PROHIBITED AS A LOTTERY, PROVIDED THE ORGANIZATION HAS BEEN IN EXISTENCE FIVE YEARS AND NET RECEIPTS ARE USED ONLY FOR CHARITABLE, RELIGIOUS, OR PHILANTHROPIC PURPOSES.
 Given my focus on ambiguities in the text of your proposed amendment, I cannot now assess the sufficiency of your proposed popular name. However, if you choose to amend and resubmit your proposed measure, you should take care to ensure that your proposed popular name does not so closely track the popular name just recited that the voters might confuse the two measures.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB:cyh